## PUGET SOUND TRACTION, LIGHT & POWER COMPANY *v.* REYNOLDS ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION OF THE STATE OF WASHINGTON, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 220. Submitted April 25, 1917.—Decided June 11, 1917.

City ordinances granting street railway franchises in the State of Washington, with the right at any and all times to make reasonable rules and regulations for the management and operation of the railway lines thereby authorized, contained a proviso that such rules and regulations should not conflict with the laws of the State. *Held:* (1) That the proviso, fairly construed, meant the laws as they should from time to time exist. (2) That the act establishing the Public

Service Commission of Washington (Laws 1911, c. 117), and orders of the commission requiring the appellant company to run through cars beyond the limits of the lines covered by such franchises over other parts of its system, were within the description of the proviso, and so did not impair its contract rights (if such they were) to make such rules and regulations.

A municipality cannot, by contract with a street railway company, foreclose the exercise of the police power of the State in respect of the regulation of rates of fare and transfer privileges, unless clearly authorized to do so by the supreme legislative power. *Detroit United Railway* v. *Michigan*, 242 U. S. 238, distinguished.

Under the Constitution of Washington, which antedated the ordinances here in question, contractual provisions in franchises conferred by municipal corporations without express legislative authority are subject to be set aside by the legislature; and the Public Utilities Act, *supra*, supersedes any conflicting ordinance or charter provision of a city.

Where several street railway lines, built under distinct franchises, are owned and operated as one system, a public regulation concerning car service and fares will not be adjudged confiscatory because of its financial results to the line immediately affected, if the system as a whole remains profitable.

Where several street railway lines, built under distinct franchises, are owned and operated as one system, it is clearly within the bounds of reasonable regulation to establish through service between them, for a single fare.

223 Fed. Rep. 371, affirmed.

THE case is stated in the opinion.

*Mr. James B. Howe* and *Mr. Hugh A. Tait* for appellant.

*Mr. W. V. Tanner*, Attorney General of the State of Washington, *Mr. Scott Z. Henderson* and *Mr. L. L. Thompson*, Assistant Attorneys General of the State of Washington, and *Mr. C. E. Arney* for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

Appellant (plaintiff below) owns and operates a street railway system in the City of Seattle, Washington,

aggregating about 200 miles, as assignee of numerous franchises granted to its predecessors in interest by the cities of Seattle, West Seattle, and Ballard, and by King County. .It filed its bill in the District Court to obtain relief from the operation and effect of an order made by the Public Service Commission of the State on March 24, 1915, bringing in as defendants the members of the commission and the Attorney General of the State. Plaintiff being a corporation of the State of Massachusetts, and defendants citizens of the State of Washington, the jurisdiction was invoked both upon the ground of diversity of citizenship and upon the ground that the order complained of was alleged to impair the obligation of contracts and deprive plaintiff of its property without due process of law, in violation of the Constitution of the United States. The order was made as the result of an investigation of which plaintiff had notice, and it contains the following provisions:

"(1) That the defendant company [plaintiff] continue the operation of through service on the Ballard Beach Line.

"(2) That the Alki Point and Fauntleroy Park lines be operated through the City of Seattle on First or Second Avenue as far north at least as Virginia Street.

"(3) That the defendant company furnish sufficient cars to provide seats for substantially all persons using the Alki Point and Fauntleroy Park lines."

The third paragraph was subject to a qualification; but since the District Court granted an injunction against this part of the order, and defendants have not appealed, the qualifying clause need not be set forth and we may confine our attention to the requirements of paragraphs 1 and 2. As to these, the District Court, three judges sitting, denied an application for a temporary injunction (223 Fed. Rep. 371), and plaintiff brings the case here by direct appeal under § 238, Jud. Code.

In order to understand the effect of the first two paragraphs and the grounds upon which they are attacked, it should be stated that the Ballard Beach line was constructed and is operated under a franchise ordinance of the City of Ballard, which city afterwards became and now is a part of the City of Seattle. The line extends from Ballard Beach to the intersection of West 59th Street and 24th Avenue, at which point it connects with lines of plaintiff that were constructed under other franchises. For some time prior to and at the date of the making of the order in question, plaintiff had been and was operating through cars over the Ballard Beach line and the connecting lines to and into the business section of Seattle, instead of physically transferring passengers from car to car at West 59th Street and 24th Avenue. Because, as is said, of the expense attached to the operation of through cars, plaintiff had given notice that it would discontinue such operation and require the transfer of passengers at the point mentioned. The effect of the order was to require plaintiff to continue the through service.

The Alki Point and Fauntleroy Park lines, each of them 8 or 9 miles in length, were constructed under separate franchises granted to predecessors in interest of plaintiff by the City of Seattle. They have their northern termini at or about Yessler Way, but for two or three years prior to the date of the order cars on these lines, instead of stopping on their north-bound trips at that point, continued about a mile farther north along First or Second Avenue to Virginia Street, in the business district of the city. Shortly before the promulgation of the order, this through service was discontinued, and north- and southbound passengers required to transfer at Yessler Way. The effect of the order was to compel the reinstatement of the through service.

The ordinances under which these three lines were constructed provide in substance that the company "shall

have the right at any and all times to make reasonable
rules and regulations for the management and operation
of the railway lines herein provided for; provided, that
such rules and regulations shall not conflict with the laws
of the State of Washington and the charter and ordinances
of the city." Each franchise provides also that the com-
pany shall have the right to charge a passenger fare for one
continuous passage not exceeding five cents, even though
a transfer be necessary, but shall sell commutation tickets
entitling the purchaser to 25 rides for one dollar, such
tickets however, not to be transferable and not to entitle
the owner to the transfer privilege.

(1) One ground of complaint respecting the order of
the commission is that, in requiring passengers to be
carried beyond the limits of a particular franchise, it in
effect confers the transfer privilege upon holders of
commutation or "four-cent" tickets. The order says
nothing about rates of fare; but we will assume, as the
District Court assumed, that it has the effect attributed
to it in this respect.

It is urged that the order impairs the obligation of the
contracts contained in the franchise ordinances, both in
regard to transfers and in regard to plaintiff's right to
make rules for the management and operation of its lines.
As to the latter point, the proviso that the rules "shall
not conflict with the laws of the State," etc., by fair con-
struction, means the laws as they shall from time to time
exist. The act establishing the Public Service Commis-
sion (Laws, 1911, c. 117) and orders made by that commis-
sion are within the description; hence, the contract, if
it be a contract, was subject to and is not impaired by the
order in question.

Assuming (what is not clear) that the provision in the
franchise ordinances respecting the rates of fare and the
transfer privilege are contractual in form, still it is well
settled that a municipality cannot, by a contract of this

nature, foreclose the exercise of the police power of the State unless clearly authorized to do so by the supreme legislative power. The Constitution of Washington, Art. XII, § 18, requires the legislature to pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight, and to correct abuses and prevent discrimination in rates by railroads and other common carriers, and provides that "A railroad and transportation commission may be established, and its powers and duties fully defined by law." By Art. XI, § 10, any city containing a population of twenty thousand inhabitants or more is permitted to frame a charter for its own government "consistent with and subject to the constitution and laws of this state." This constitution was adopted in 1889, long previous to the date of the earliest of plaintiff's franchise ordinances. The Supreme Court of Washington has held that the provisions of municipal charters are subject to the legislative authority of the State; that the Public Utilities Act superseded any conflicting ordinance or charter provision of any city; and that contractual provisions in franchises conferred by municipal corporations without express legislative authority are subject to be set aside by the exercise of the sovereign power of the State. *Ewing* v. *Seattle*, 55 Washington, 229; *State ex rel. Webster* v. *Superior Court*, 67 Washington, 37, 43–50.

The present case is very clearly distinguishable from *Detroit United Railway* v. *Michigan*, 242 U. S. 238, 248, where the state legislature had expressly provided that the municipal corporation might make a binding agreement with a street railway respecting the rates of fare.

(2) It is insisted that neither the Alki nor the Fauntleroy Park line is earning sufficient to pay its operating cost, or ever can do so under a fare limited to five cents, and that for this reason an order requiring these lines to carry passengers beyond the termini fixed in their fran-

chises upon four-cent tickets, and to give them the more
costly through service by means of a single car, is neces-
sarily a taking of plaintiff's property without compensa-
tion, and hence without due process of law within the
meaning of the Fourteenth Amendment. A similar
point was made in the bill with respect to the Ballard
Beach line, but is not seriously pressed here. As to the
other two lines, there seems to be no question that since
they run for a considerable distance over the tide flats,
receiving and discharging but few passengers *en route*,
so that a majority of the passengers are carried distances
of five or six miles, these lines, separately considered,
never have paid operating expenses, and probably never
will.

But we cannot accede to the suggestion that the ques-
tion whether the commission's order is confiscatory or
otherwise arbitrary within the inhibition of the Fourteenth
Amendment is to be determined with reference alone to the
Alki, the Fauntleroy, or the Ballard Beach lines. These
are and long have been operated by plaintiff as parts of a
system comprising two hundred miles of tracks. The
commission found that the net earnings of the system for
the year ending February 28, 1915, not including de-
preciation and taxes, were upwards of $1,600,000; that
the company had refused to produce the valuations of its
property made by experts, and had failed to show that
there was not sufficient return from its property to pay
operating expenses, taxes, and depreciation, and leave a
balance. And from the evidence introduced the commis-
sion found the fact to be that, allowing for the services
required by its order, the company would have net returns
over and above operating expenses, taxes, and deprecia-
tion. It was not and is not contended that the system
earnings are unremunerative.

Plaintiff relies upon *Northern Pacific Ry. Co.* v. *North
Dakota*, 236 U. S. 585, 604, where this court held that a

statute which segregated a single commodity, and imposed upon it a rate that would compel the carrier to transport it for less than the proper cost of transportation, was in excess of the power of the State.   In our opinion, that decision is inapplicable, the present case being controlled rather by *St. Louis & San Francisco Ry. Co.* v. *Gill,* 156 U. S. 649, 665, where the State of Arkansas had prescribed a maximum rate of three cents per mile for each passenger, under a penalty payable to the passenger from whom an overcharge was exacted, and in an action to recover such a penalty the company defended on the ground that the portion of its road over which plaintiff was carried was highly expensive to construct and maintain, and that the cost of maintaining it and transporting passengers over it exceeded the maximum rate fixed by law.   But this court held "that the correct test was as to the effect of the act on the defendant's entire line, and not upon that part which was formerly a part of one of the consolidating roads; that the company cannot claim the right to earn a net profit from every mile, section, or other part into which the road might be divided, nor attack as unjust a regulation which fixed a rate at which some such part would be unremunerative;  . . .  and, finally, that to the extent that the question of injustice is to be determined by the effects of the act upon the earnings of the company, the earnings of the entire line must be estimated as against all its legitimate expenses under the operation of the act within the limits of the State of Arkansas."

(3) Plaintiff's brief contains some general attacks upon the effect of the commission's order in requiring plaintiff to carry passengers over portions of "separate and distinct franchise routes" upon payment of a single fare. This criticism is not well founded.   Even were the several portions of its lines separately owned, they being operated practically as a single system, it would be within the

bounds of reasonable regulation to establish through service and a joint rate. *Wisconsin, Minnesota & Pacific R. R. Co.* v. *Jacobson*, 179 U. S. 287, 296, 301; *Michigan Central R. R. Co.* v. *Michigan Railroad Commission*, 236 U. S. 615, 629.

The decree of the District Court, so far as appealed from, is

*Affirmed.*


THE CHIEF JUSTICE and MR. JUSTICE McKENNA dissent because they are of the opinion that this case as a matter of authority is controlled by *Detroit United Railway* v. *Michigan*, 242 U. S. 238, and that as a matter of original consideration the assailed legislation has impaired the obligation of a contract in violation of the Constitution of the United States and was repugnant to the Constitution because wanting in due process.

MR. JUSTICE McREYNOLDS also dissents.