[No. 20370.   Department Two.   February 10, 1927.]

DRYDEN COMMERCIAL CLUB et al., Appellants, v. THE
DEPARTMENT OF PUBLIC WORKS, Respondents.[1]

[1] RAILROADS (3, 12)—CONTROL AND REGULATION—ABANDONMENT OF
STATIONS—JUDICIAL REVIEW.  Findings of the department of
public works that a railroad company may close its station
during certain months, will not be set aside as unreasonable,
where it appears that the company maintains stations within
three or four miles in either direction which adequately serve
the community during such months, and increased motor trans-
port service has supplanted part of the railway business, which
is small, and the evidence as to the reasonableness of the service
was sustained both by the department and the trial court.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered October 20, 1926,
affirming an order of the department of public works
authorizing the closing of a railroad station for five
months in each year.  Affirmed.

Cleland & Clifford, for appellants.

The Attorney General and H. C. Brodie, Assistant,
and Charles S. Albert, Edwin C. Matthias and A. J.
Clynch, for respondents.

ASKREN, J.—The town of Dryden is located in east-
ern Washington on the line of the Great Northern
Railway, being approximately fifteen miles from We-
natchee, seven miles from Leavenworth, four miles
from Cashmere, and the same distance from Peshastin,
and is located in the fruit growing region.

In 1914, residents of that community, feeling that
the business originating in that vicinity justified a
depot and an agent in charge, petitioned the public
service commission for an order directing the building
of an adequate depot and putting an agent in charge.

[1]Reported in 252 Pac. 911.

In May, 1915, the commission duly made its order authorizing the same. In 1926, the railway company, deeming the amount of business insufficient to justify the expenditure necessary to maintain an agent the year round, petitioned for a modification of the order permitting them to withdraw the agent during the period from April 1, to September 1, each year. The commission, after hearing the evidence submitted, modified the order in accordance with the petition. The plaintiffs, deeming themselves aggrieved, appealed to the superior court, which affirmed the order. This appeal followed.

[1] The main ground urged upon appeal is that the evidence offered before the commission did not justify the action taken. It is unnecessary to set out all the evidence, but in its salient points it developed the following: The principal business at Dryden, as far as the railway company is concerned, is the fruit business, which is mostly seasonal,—only a very small portion of it being moved during the summer months here in controversy; the cost of maintaining an agent is upwards of two hundred dollars per month, salary and other expenses, although it was but eighty dollars in 1915; Dryden is only three and one-half miles from the nearest station, Peshastin, lying to the west of Dryden, and four and one-half miles from Cashmere, lying to the east of Dryden, at both of which places agents are in charge the year around; there is a good highway between Dryden and each of these stations; most of the people in the vicinity have telephones; the railway's business at Dryden has increased a great deal in the last ten years, but the increase has been mostly in freight, the passenger earnings showing only a slight increase; the community is growing and the business thereof increasing each year; the business at the depot during the summer months can be taken care

of without an agent or by arrangements with the agent at one of the other stations, although this will be at some inconvenience to the patrons.

The appellants urged that, since the business of the station has increased remarkably in the past ten years, and at a ratio much greater than the increase in the cost of maintaining an agent, there was not such a change of conditions as to justify the order.

It is not necessary that there be changed conditions to justify the order. Rem. Comp. Stat., § 10431 [P. C. § 5616], provides:

"Any public service company affected by any order of the commission, and deeming itself aggrieved, may, after the expiration of two years, from the date of such order taking effect, petition the commission for a rehearing upon the matters involved in such order, setting forth in such petition the grounds and reasons for such rehearing, which grounds and reasons may comprise and consist of changed conditions since the issuance of such order, or by showing a result injuriously affecting the petitioner which was not considered or anticipated at the former hearing, or that the effect of such order has been such as was not contemplated by the commission or the petitioner, or for any good and sufficient cause which for any reason was not considered and determined in such former hearing. Upon the filing of such petition, such proceedings shall be had thereon as are provided for hearings upon complaint, and such orders may be reviewed as are other orders of the commission; *Provided,* That no order superseding the order of the commission denying such rehearing shall be granted by the court pending the review. In case any order of the commission shall not be reviewed, but shall be complied with by the public service company, such petition for rehearing may be filed within six months from and after the date of the taking effect of such order, and the proceedings thereon shall be as in this section provided. The commission may, in its discretion, permit the filing of a petition for rehearing at any time. No order of the commission

upon a rehearing shall affect any right of action or penalty accruing under the original order unless so ordered by the commission."

The order does not set out whether it was made because of changed conditions. It apparently is based largely on the fact that the business is seasonal, and that the removal of the agent during the summer months would not seriously inconvenience the patrons. It may well be that the commission thought the effect of its former order was such as was not contemplated at the time of the original hearing. Indeed, the commission seems to have had misgivings as to the portion of the order requiring an agent the year around, for it expressly provided in the 1915 order as follows:

"It is further ordered that the railway company provide and maintain an agent at the station of Dryden from September 1, 1915, until further ordered, and after February 1, 1916, the commission will consider any showing that respondent company may make as to whether or not an agent should be maintained throughout the year."

The facts upon which the 1915 order was based are not before us, other than the findings in the order, and we do not know what evidence was produced at the hearing.

The serious question in this case is this: Is the order of the commission a reasonable one under all the circumstances? In determining this question we must approach it with the well known rule in mind that the commission is the tribunal authorized by law to determine it, in the first place, and that we are not at liberty to substitute our own judgment as to what the order should be, unless we can say clearly that the order is unreasonable. *State ex rel. Great Northern Ry. Co. v. Railroad Commission,* 60 Wash. 218, 110 Pac. 1075.

The purpose of the rule is evident. The members of the commission are presumably chosen for their special fitness for the duties imposed upon them by law, and the matters presented to them are not of the character that the judicial department is usually conversant with, dealing as they do with a myriad of questions concerning transportation of freight and passengers, with special reference to shipping facilities, times of trains, costs, etc.

It must be apparent at the outset that no single fact can be controlling in such an inquiry, but each must be taken with due consideration to its proper place in the whole record made. For example, the appellants have laid great stress upon the fact that a progressive increase of business during the time that has elapsed since the original order of 1915 must, in the absence of a showing that the costs of operation of the depot maintenance have increased in greater ratio, be controlling.

This fact should be given great weight in considering the testimony, but it must be apparent that even this point deserves careful scrutiny. A large portion of the freight business goes over other railroad lines, and the record does not disclose what percentage of the freight receipts go to the Great Northern Railway Company. There is another point that seems to us quite controlling.

The record is undisputed that, on either side of Dryden, is a station—one three and one-half miles distant and the other four and one-half miles distant,—or three stations, including Dryden, in an eight mile stretch. Manifestly this is an unusual situation. It may be that circumstances in a particular case would justify stations so close together, but they do not necessarily arise alone out of the amount of business

transacted at the station. It is common knowledge that
in large cities the amount of freight that would be
moved from a given radius such as we have here might
be even greater than that shown by the record, but it
is not the custom to have stations every three and one-
half or four and one-half miles. If this were so the
larger cities of the state might be entitled to several
stations. As to where one should be located depends
to a very great extent upon the location of others, the
business to be expected, and other like questions.
Ordinarily, a railway company may be expected
through self interest to establish and maintain them at
any point where the proper circumstances combine to
make such action profitable. But, in order to insure
that action, the commission was created by law to see
that in all proper cases it was taken.

So that, upon the presentation of the case here, we
have the action of the railway company, which ordi-
narily would desire to maintain an agent during the
summer months, if profitable and in the interests of
good railroading, petitioning to be relieved of what it
considers an unnecessary burden; the approval of that
petition, after hearing, by the administrative officers
who are presumed to act in such a way as to properly
protect the interests of the public, and an affirmation
of that approval by the superior court. This presents
a strong case in behalf of the action of the commission.
Its action cannot be interpreted as an indication of
lack of progress in the community served by the agent
at Dryden, for it is common knowledge that the most
progressive and financially healthy communities have
from time to time had service in some form or other
restricted. Increased motor transport service has in
many cases supplanted that of the railway, and the
ease with which passengers may avail themselves of
such service may, in some cases, justify a reduction in

railway service, even though the actual business of the railway kept increasing. Likewise, the duty to serve the public is one which rests upon such a public service corporation as a railroad, and even a decrease in business may not always justify a decrease in service.

These observations make it apparent that only a consideration of all the evidence by a tribunal qualified through experience to determine these questions can properly protect the interests of the public as well as the railroad.

We have examined the record with care. On either side of the controversy are many persuasive facts which appeal strongly to us as bearing out the arguments presented. But due consideration of them has failed to convince us that we would be justified in holding that the order of the commission was unreasonable in view of all the facts.

The observation of the supreme court of the United States in *Northern Pacific Railroad Co. v. Washington Territory*, 142 U. S. 492, a case where it was sought to compel the railroad to maintain a station at a point where it had been previously maintained, is so clearly applicable to the points here involved that we quote therefrom:

"The difficulties in the way of issuing a mandamus, to compel the maintenance of a railroad and the running of trains to a terminus fixed by the charter itself, are much increased when it is sought to compel the corporation to establish or to maintain a station and to stop its trains at a particular place on the line of its road. The location of stations and warehouses for receiving and delivering passengers and freight involves a comprehensive view of the interests of the public as well as of the corporation and its stockholders, and a consideration of many circumstances concerning the amount of population and business at, or near, or within convenient access to one point or another, which are more appropriate to be determined by the directors,

or, in case of abuse of their discretion, by the legislature, or by administrative boards intrusted by the legislature with that duty, than by the ordinary judicial tribunals."

The judgment of the trial court is affirmed.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and PARKER, JJ., concur.