CHICAGO, M., ST. P. & P. R. CO., RESPONDENT, *v.* BOARD OF RAILROAD COMM'RS., ET AL., APPELLANTS.

No. 9229.

Submitted January 5, 1953. Decided March 5, 1953.

255 Pac. (2d) 346.

Mr. Arnold H. Olsen, Atty. Gen., Mrs. Vera Jean Heckathorn, Asst. Atty. Gen., Mr. Edwin S. Booth, Jr., and Mr. John H. Risken, Helena, for Board of Railroad Commissioners.

Messrs. Murphy, Garlington & Pauly, Missoula, Mr. Harry C. Pauly, Missoula, Mr. B. E. Lutterman, Seattle, Washington, for respondent.

Mr. Lester H. Loble, Helena, Messrs. Loble & Loble, and Mr. Gene A. Picotte, Helena, for intervenors and appellants.

Mr. Booth, Mr. Lutterman, Mr. Pauly and Mr. Picotte argued orally.

MR. JUSTICE ANDERSON:

The board of railroad commissioners made an order on March 6, 1951, denying and dismissing an application of plaintiff, railroad company, requesting authority to discontinue passenger trains Nos. 117 and 118, operating between Harlowton, Lewistown and Great Falls, Montana, a distance of 199 miles. As authorized by law, a complaint was filed by the plaintiff in the district court.

The entire transcript, including all pleadings and exhibits, and the evidence introduced at the hearing before the board was, by stipulation, introduced in evidence for consideration in the district court. Considerable evidence was taken by the lower court and at the termination of the trial a decree was entered, the substance of which was that the order of the board above referred to was unreasonable and contrary to law and was therefore annulled, and the board was enjoined from carrying out its order.

The court's judgment or decree resulted from findings and conclusions, the essential parts of which are: That the cost of operating the trains in question is disproportionate to the use and revenue derived therefrom; that public convenience and necessity do not require or justify the continued operation of

the trains; that their continued operation constitutes an unreasonable burden upon interstate commerce; that to require their continued operation would constitute, in legal effect, a confiscation of private property to the extent of the losses resulting from the operation thereof, without compensation, contrary to the provisions of the United States Constitution and of the Constitution of the State of Montana; that the order rendered by the defendant board is unreasonable, unjust, arbitrary and illegal, and should be set aside and held for naught; that the plaintiff is entitled to an order authorizing it to discontinue the operation of the trains.

The record discloses that the railroad operates a line of railroad through various states, including Montana, and the trains here in question are operated on a branch line wholly within the state of Montana. For the past five years there has been a gradual decline in the use of passenger service offered by trains Nos. 117 and 118, and, because of a rising cost of operating these trains, the revenues derived from their operation is inadequate to defray the costs of the operation. During the year ending August 31, 1950, the total revenue for this operation was $54,942, whereas the expenses amounted to $138,632, resulting in a net, out-of-pocket loss of $83,690. There is no evidence in the record as to the revenue derived from freight operations over the line here in question, but it was conceded by the railroad that this branch line is a good revenue producer.

A number of witnesses appeared as opponents to the proceedings. These witnesses included, among others, representatives of the Chambers of Commerce of Great Falls and Lewistown, a representative of the U. S. Air Base at Great Falls, and individuals from most of the points along the entire railroad.

It was generally shown that the roads along a substantial portion of this railroad are not geared to modern needs and transportation. Except in part, there are no highways maintained by the state of Montana as primary roads. In the winter the roads are, at times, impassable. The railroad crosses a good

stock raising and agricultural district. It is apparent, from the record, that part of this district of Montana, saving therefrom Great Falls, Lewistown and Harlowton, has not, highwaywise, kept abreast with other parts of Montana. The blame for the condition cannot be placed at the doorstep of the railroad or the people living along the railroad. However, poor roads do exist and the board of railroad commissioners did not pass this by without concern.

It was further shown that there is no other common carrier serving a substantial portion of the area served by trains Nos. 117 and 118. There was a showing that express service and mail service would be adversely affected if these trains were discontinued. Respondents argue that these services are not to be considered because the carrier has no control over them and that they may be terminated at the will of the Post Office Department or Railway Express Company.

It might work some inconvenience to the public by abandonment of the service which carried with it the loss of mail and express facilities and therefore the board had a right to consider mail and express in connection with public convenience and necessity. Gardner v. Commerce Commission, 400 Ill. 123, 79 N. E. (2d) 71; In the Matter of Application of Union Pacific, etc., 64 Idaho 597, 134 Pac. (2d) 1073.

It is well established that no set rule can be used to determine whether or not public convenience and necessity require a given service to be performed. The facts in each case must be separately considered and from those facts the question is to be determined. Gardner v. Commerce Commission, supra.

The board found there is a public need and convenience for the operation of the service offered by trains Nos. 117 and 118.

Under R. C. M. 1947, secs. 72-132 and 72-155, a district court is given the power to determine whether or not any order of the board of railroad commissioners is just and reasonable, provided that any order of said board shall prima facie be deemed reasonable, just and proper.

Respondent takes the position that section 72-132 is the law

applicable here. With this we agree. Respondent says the legislature intended, by R. C. M. 1947, sec. 72-132, that the court action is to be a trial *de novo*, and the trial court should make its own independent determination of the matter before it.

The courts have a measure of judicial authority in matters concerning orders of the board of railroad commissioners, such as the one under consideration. The rule that was followed in the case of Fulmer v. Board of Railroad Commissioners, 96 Mont. 22, 28 Pac. (2d) 849, 855, is applicable to the instant case. In that case it was held the review by the court includes consideration of the questions: "(1) Did the board act beyond the power which it could constitutionally exercise? (2) Did the board act beyond its statutory power? and (3) Did the board base its action upon a mistake of law? This court has qualified the above rule [when passing upon rate questions] by the following language: 'But questions of fact may be involved in the determination of questions of law, so that an order, regular on its face, may be set aside if it appears that the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or if the authority therein involved has been executed in such an unreasonable manner as to cause it to be within the elementary rule that substance, and not the shadow, determine the validity of the * * * power.' Billings Utility Co. v. Public Service Comm. [62 Mont. 21, 203 Pac. 366]."

The findings of the board are by law deemed prima facie just, reasonable and proper, and courts should ascribe to them the strength due to the judgments of a tribunal appointed by law and informed by experience. Illinois Central R. Co. v. Interstate Commerce Commission, 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128. The board's conclusion is subject to review, but when supported by evidence is accepted as final.

In Great Northern Ry. Co. v. Nagle, D. C., 28 F. Supp. 812, 813, the court said, when speaking of the operation of trains

between certain points in Montana: "Several places, as shown by the evidence, are served by the trains and not by the busses and trucks. Even where the towns are served, or partly served, by the last two means of transportation, the service does not appear to be adequate or altogether dependable. * * *

"* * * However, it is apparent to the Court that there is a substantial loss in maintaining this service. No doubt the State can require the carriers to furnish reasonable and adequate facilities to serve not only the local necessities but the local convenience, and may require additional service in a proper case * * *."

The court held in the Nagle case that under the circumstances interstate commerce was not unduly burdened and that there was a sufficient showing of public need and convenience so that it would not grant injunctive relief against the board. The facts in the instant case are less compelling upon the court to grant injunctive relief than they were in the Nagle case.

A consideration of the cost of operating the two trains in question, as compared with the shown need and convenience to the public, seems disturbing at first blush. It is contended that an out-of-pocket loss of about $83,000 annually in the operation of this service, as shown by the evidence, is, in and of itself, sufficient to justify a discontinuance of the service. However, when, as the record shows, the out-of-pocket loss from passenger service on the Milwaukee railroad within Montana, for the year 1950, was $1,001,283, the loss on the line here in question is not as disturbing as at first impression it may appear. There are about 750 miles of main line track and, as said before, the service here in question operates over 199 miles of track.

The only passenger trains operating on a branch line of the railroad, within Montana, are the two trains which are the subject matter of this controversy. Mr. Severs, vice-president in charge of finance, accounting and real estate of the railroad, was asked the following question and made the following answer, viz: "Q. Mr. Severs, from the studies made with which you are

familiar, could you state whether or not a large percentage of this loss generates from branch line operation or secondary passenger operations? I am speaking solely of passenger operations. A. My answer to that is that a great part of the loss, in fact most all, generates from passenger trains that operate on secondary branch lines.''

The loss on this, the only branch line service in Montana, does not seem to outweigh the necessity and convenience shown for the continued service and the board of railroad commissioners so found. As can be seen, the branch line passenger, out-of-pocket loss in Montana is about one-twelfth of the over-all passenger, out-of-pocket loss on the railroad's operation in Montana. The testimony of witness Severs is not borne out by the facts, so far as the Montana branch line is concerned. If most all the loss generates from secondary branch lines, the same must be found in other states in which the railroad operates.

It is true that the loss per income dollar was shown to be greater on the branch line service in Montana than on the main line; however, this is but one of many things which the board had to consider. The record shows that the railroad made a profit on its over-all operation.

Even if we were so disposed by our personal views, we cannot substitute our discretion for that of the board unless we can say clearly that the order is unreasonable. State ex rel. Great Northern Ry. Co. v. Railroad Commission, 60 Wash. 218, 110 Pac. 1075; Dryden Commercial Club v. Department of Public Works of Washington, 142 Wash. 317, 252 Pac. 911.

From a study of the record we think the lower court erred in holding that the board of railroad commissioners abused its lawful discretion and delegated authority by finding that public convenience and necessity demanded the operation of trains Nos. 117 and 118.

The scope of the power of regulation over carriers is comprehensive; nonetheless, the railroad is under the protection of the Constitution and is entitled to as full protection as any other private property and cannot be taken without just

compensation or without due process of law. Mississippi Railroad Commission v. Mobile & Ohio Ry. Co., 244 U. S. 388, 37 S. Ct. 602, 61 L. Ed. 1216.

We have determined that the board was within its lawful bounds in finding that there was need and convenience for the continued operation of trains Nos. 117 and 118, and we have determined that the lower court was without power to substitute its judgment for that of the board upon the showing that was made in the record. It follows that the lower court's reasons for finding that this service is an undue burden on interstate commerce and an unlawful taking of property must, if they can stand at all, be found in the other matters which were presented to it by the record.

Trains Nos. 117 and 118 are operated at a loss. This conclusion is evident from the facts. Standing alone it is not sufficient to justify the discontinuance of the trains in question. It has long been settled that a requirement that a particular service be rendered at a loss does not make a service confiscatory and thereby an unconstitutional taking of property. St. Louis & S. F. R. Co. v. Gill, 156 U. S. 649, 667, 15 S. Ct. 484, 39 L. Ed. 567, 573; Atlantic Coast Line R. Co. v. North Carolina Corp. Com'n, 206 U. S. 1, 27 S. Ct. 585, 51 L. Ed. 933; Missouri Pacific Ry. Co. v. State ex rel. Kansas ex rel. Taylor, 216 U. S. 262, 30 S. Ct. 330, 54 L. Ed. 472; Chesapeake & O. Ry. Co. v. Public Service Commission, 242 U. S. 603, 37 S. Ct. 234, 61 L. Ed. 520; Puget Sound Traction, Light & Power Co. v. Reynolds, 244 U. S. 574, 37 S. Ct. 705, 61 L. Ed. 1325; Fort Smith Light & Traction Co. v. Bourland, 267 U. S. 330, 45 S. Ct. 249, 69 L. Ed. 631; In re Application of Union Pacific R. R. etc., supra. The Constitution does not grant to a railroad company a continuing privilege of exercising its franchise and at the same time permit it to escape from the duties incidental to it. Fort Smith Light & Traction Co. v. Bourland, supra.

Throughout the entire proceedings below the railroad did not disclose the over-all revenue derived on the branch line in ques-

tion. The record, however, discloses that the branch line is a good revenue producer.

The record contains only the sketchiest evidence concerning ▮ the operation of the railroad in its entirety. No showing whatever was made that the railroad, by the loss incurred in running trains Nos. 117 and 118, was deprived of the protection to which it is entitled under the Constitution for its investment in Montana which alone can be made the basis of a claim under the Due Process Clause of the Fourteenth Amendment.

Many cases were cited by respondent wherein particular services by railroads were held to be an undue burden on interstate commerce and an unlawful taking of property. It is interesting to note that these cases turned upon the theory that there was a lack of necessity and convenience. Where there is a definite showing of lack of convenience and necessity, courts have consistently held that evidence of earning and losses would not be material. Chicago, B. & Q. R. Co. v. Board of Railroad Commissioners, D. C., 78 F. Supp. 1010; Northern Pacific Ry. Co. v. Board of Railroad Commissioners, D. C., 46 F. Supp. 340. Here convenience and necessity is found to exist and we hold that evidence of earnings and losses on its various services would be material before a railroad would be heard to complain that a service is an undue burden on interstate commerce or that in rendering the service there is an unlawful taking of property without due process of law. Compare: King v. United States, 344 U. S. 254, 73 S. Ct. 259, 97 L. Ed. 301.

The judgment and order are reversed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.

PER CURIAM.

Petition for rehearing is denied. See Baltimore and Ohio Railroad Company v. United States, 73 S. Ct. 592, decided by the United States Supreme Court, March 16, 1953.