## The Chicago General Railway Company

*v.*

## The City of Chicago.

*Opinion filed October 24, 1898—Rehearing denied December 14, 1898.*

1. Municipal Corporations—*courts will not presume that legal act was done for illegal purpose.* The courts will not presume that an act by a city council was done for an illegal purpose, where it is apparent the act is one which the council might legally perform.

2. Same—*city may impose mileage tax on street railroad as compensation for use of streets.* A city may, by the ordinance granting the franchise, impose a reasonable annual tax for each mile of railroad laid by a street railroad company, even though such tax is for the purpose of compensating the city for the use of its streets.

3. Same—*mileage tax on street railroad is not violative of constitutional rights.* A city having power, under the statute, to grant or refuse a franchise to a street railway company, as "it shall deem for the best interest of the public," may impose a special mileage tax in particular cases, in the absence of any general statute or general ordinance fixing a uniform tax of a similar nature.

4. Same—*by accepting franchise street railway is bound by its terms.* A street railway company having accepted its franchise in its entirety, and enjoyed the benefits thereof, is bound by its terms and conditions not against public policy nor prohibited by statute.

Writ of Error to the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding.

Jesse B. Barton, and Charles L. Bonney, for plaintiff in error.

Charles S. Thornton, Corporation Counsel, for defendant in error.

Mr. Justice Wilkin delivered the opinion of the court:

This is an action of debt brought by the city of Chicago, against plaintiff in error, to recover damages on its bond in the sum of $25,000. Damages were assessed at $2250, and judgment rendered for that amount and costs, from which plaintiff in error prosecutes this writ.

The facts in the case are uncontroverted. In February, 1892, the city passed an ordinance granting to plaintiff in error authority to construct, maintain and operate a street railway on Twenty-second and other streets in the city, upon certain terms and conditions, among which was the following:

"Sec. 8. *Per mile tax.*—The rights, privileges and franchises herein conferred are granted upon the further condition and consideration that on or after December 1, 1895, the said company or their legal assigns, or any person, firm, company or corporation in any way claiming under or through them, or operating the road herein authorized, shall pay into the city treasury of the city of Chicago, annually, for each and every lineal mile of their track laid under the provisions of this ordinance, and a proportionate amount of any fraction of a mile laid as herein authorized, the sum of five hundred dollars ($500,)" etc.

Section 11 required the company to give bond in the sum of $25,000, conditioned for the faithful observance and performance of the conditions of the ordinance. Plaintiff in error accepted the ordinance, and in pursuance of its terms caused the bond sued on to be executed. Four and a half miles of track were laid by it, but it refused to pay the sum provided by section 8 when due, and thereupon this suit was brought.

The principal question to be determined in the case is, whether the city had the power to impose the condition prescribed in section 8 of the ordinance granting the right to the defendant railway company to occupy the street with its tracks.

Our constitution (art. 11, sec. 4,) provides: "No law shall be passed by the General Assembly granting the right to construct and operate a street railway within any city * * * without requiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad." The twenty-fourth clause of section 1 of article 5 of the City and Village act (then in force) gave the city power "to permit, regulate or prohibit the locating, constructing or laying a track of any horse railroad in any street, alley or public place; but such permission shall not be for a longer time than twenty years." (Rev. Stat. p. 219.) Section 3 of the Horse and Dummy act provides that no company shall have the right to construct its road along any street or alley, etc., without the consent of the corporate authorities of such city, and that "such consent may be granted for any period not longer than twenty years, on the petition of the company, upon such terms and conditions, not inconsistent with the provisions of this act, as such corporate authorities or county board, as the case may be, shall deem for the best interest of the public." (Rev. Stat. p. 571.)

It is not denied that the city had the power to impose a money condition as a license fee, or to protect it against liabilities and expenses occasioned by reason of the construction of the railroad in its streets, or for expenses and the like of defendant in error, but it is earnestly insisted that this ordinance shows an unlawful attempt on the part of the municipality to sell its license, and that it is also an unauthorized attempt to raise revenue for the purposes of municipal government; also, that, because the ordinance contains other terms and conditions for the protection of the city against loss or disbursements, such as

a license fee of $50 per annum for each car operated, there is no room for the presumption that the condition for the payment of this amount per mile was with a view to such purposes. We are unable to agree with counsel in these contentions. It was clearly within the power of the council, by its ordinance, to make this additional condition if it so desired, and the courts cannot indulge the presumption that the act was done for an illegal purpose, it being apparent that it could be done legally. It is not claimed the condition is unreasonable or against public policy, and therefore void. It is not for this court to review the acts of the city council which are within its discretion and within the grant of power to it. *People* v. *Chicago West Divison Ry. Co.* 118 Ill. 113.

But if it were true, as contended by counsel, that the purpose of the mileage tax was to compensate the city for granting the privilege to the plaintiff in error to lay down its tracks and operate its street railway, it is still, in our opinion, a valid condition, and comes fully within the scope of the power granted to the city by section 3 of the Horse and Dummy act, *supra.* In *City of Providence* v. *Union Railway Co.* 12 R. I. 473, it is said: "The defendant corporation also contends that it is not liable because the city had no power to exact a pecuniary compensation for the use of the streets. We do not think this defense is tenable. The charters of the horse railroad companies contain a provision that nothing in the charters shall be construed to allow the companies to construct, use or continue their roads into, over or through any street or highway of the city unless with the consent of the city council of said city, and upon such terms and conditions and under such rules and regulations as said city council may impose. The defendant cites certain cases which hold that a municipal corporation has no right, under a simple authority to license, to demand money for the license beyond a small fee for incidental expenses. The ground of decision of those cases is that the power to

license is a mere police power, and therefore cannot be exercised with a view to revenue, unless conferred in terms which plainly authorize it.   But the power here conferred is not a police power.   Evidently it was conferred, not only for the general good, but also to enable the city to protect itself as the body charged with the maintenance and repair of the streets, and it is to be construed fairly in view of its purpose.   Rails in streets are a serious annoyance.   They divert travel to other streets, and so necessitate an increase of care and expense, not only where they are laid, but also in such other streets.   It is therefore not unreasonable to require the companies to pay something for their privileges.   The city, in giving its assent, has required it, and the companies, in accepting the assent, have agreed to comply with the requirements. We think the agreement binds them."   The following cases, under statutes not materially different from ours, are to the same effect: *City of Allegheny* v. *Millroh*, 159 Pa. St. 411; *Federal Street Railway Co.* v. *Allegheny*, 14 Pittsb. L. J. (N. S.) 259; *Street Railway Co.* v. *Covington*, 9 Bush. 127.

Booth, in his work on Street Railways, (sec. 284,) deduces from the authorities the conclusion that the municipality has a right to exact a money consideration for its consent to the occupancy of its streets, and says: "The right to exact compensation in money, otherwise called a *bonus*, is justified on the ground that the right to use a street already graded, as a road-bed, is a valuable privilege, and because the occupation of the streets by cars interferes to some extent with their use by other travelers.   Where the enjoyment of the franchise depends upon the consent of the local authorities, their right to impose conditions authorizes them to exact the payment of a *bonus*."   Judge Elliott, in his recent and able work on Railroads, (sec. 1081,) lays down substantially the same doctrine.

It is said the public, for the best interests of which the city council must act, is not the public within the

limits of the city, but that by the term "public" is meant "the body of the people at large; the people of the neighborhood; the community at large, without reference to geographical limits,"—citing *Baker* v. *Johnson,* 21 Mich. 319.   We do not deem it important to here determine the meaning of the word "public," as used by the legislature. Certainly there is nothing shown in this record to justify the presumption that the city council used the word in a sense other than that placed upon it by the legislature.

It is again insisted that the condition embodied in section 8 of the ordinance is violative of the fourteenth amendment to the constitution of the United States, of section 2 of the bill of rights of the constitution of this State, and of section 22 of article 4 of the latter constitution.   The position is, that each of these are violated because the railway company is, by the condition, denied the equal protection of the laws of its property without due process of law; that a general law may be made, applicable to all street railways in the city, but no special ordinance can be enacted; and it is insisted that because other ordinances have been adopted by the city granting privileges to other railway companies to occupy the streets without exacting this condition, the latter provision has been violated.   We think, with counsel for the city, that the statute having given the municipality power to grant or withhold its consent as "it shall deem for the best interest of the public,"—the power being discretionary,—it is manifestly not to be exercised by a general ordinance applicable alike to all cases, but each case must be acted upon with reference to its peculiar conditions and circumstances.   If, in the exercise of its sound discretion, the city council shall determine that the best interests of the public do not require the imposition of any conditions whatever, it may grant its license without qualification; but if, on the other hand, the public interest requires that the occupancy of particular streets, under peculiar conditions, demands that certain exactions

shall be made of the company for the privilege conferred, then the city council has a right to so provide, and no constitutional right or privilege is interfered with. There is no general law of the State of Illinois, nor is there an ordinance of the city of Chicago, requiring all street railway companies to pay a mileage tax, but, as we have before said, discretionary power is conferred by the legislature upon the city council to impose such a condition upon giving its consent to any particular company to occupy its streets.

We are also of the opinion that even though it might be held that the condition upon which the permit or license was granted to the defendant railway company was *ultra vires*, the city not having the power to impose it, nevertheless, the ordinance having been accepted by the company with the condition attached, agreeing thereby to perform it, it became a valid contract between it and the city, the validity of which the defendant is now estopped to deny. The act of the city in imposing the condition cannot be treated as against public policy or prohibited by statute, and void, and therefore, having accepted the contract in its entirety and enjoyed the benefits for which it agreed to pay the amount prescribed, it cannot now repudiate that contract. *Kadish* v. *Building Ass.* 151 Ill. 531; *Cook County* v. *City of Chicago*, 158 id. 524; *City of Fulton* v. *Northern Illinois College*, id. 333.

It is well settled in this State, that while the granting of authority to occupy the public streets of a city for other than the ordinary purposes of a street is, in the first instance, a mere license, still, when that license is granted upon conditions, and the licensee has accepted the privilege and performed the conditions, it becomes a contract between the parties. Here it must be admitted that the defendant could only occupy the streets of the city with its tracks by the consent of the municipal authorities. That consent could be given or withheld, as these authorities deemed proper; and upon such conditions as

they considered for the best interests of the public they granted the privilege and named the conditions. The defendant accepted, without qualification. It has availed itself of the benefits of the contract and now seeks to repudiate the conditions. We are unable to see upon what principle, under the law of contracts, it can be allowed to do so. We think, however, that the liability of the defendant upon its bond may be properly placed upon the broad ground that the city council was vested with full power and authority to impose the condition and require the bond for its faithful performance.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*