BILLINGS UTILITY CO., APPELLANT, *v.* PUBLIC SERVICE
COMMISSION OF MONTANA ET AL., RESPONDENTS.

(No. 4,695.)

(Submitted November 3, 1921.  Decided December 19, 1921.)

[203 Pac. 366.]

*Public   Utilities — Public   Service   Commission — Rate-fixing—*
*Legislative  not  Judicial  Act—Extent  of  Review—Burden  of*
*Proof.*

Public Service Commission—Rates Fixed *Prima Facie* Lawful—Burden of
Proof.
    1.   Under Chapter 52, Laws of 1913, rates fixed by the Public Ser-
vice Commission for a public utility furnishing hot-water heat in a
city are *prima facie* lawful, can be attacked in court on the sole
ground that they are unlawful or unreasonable, and must be deemed
reasonable and just until final determination by the courts, the bur-
den of proof resting upon the party attacking the order of the
commission.

Same—Establishment of Rates a Legislative Act.
    2.   The establishment of a rate is a legislative, and not a judicial,
act, and the power of the courts is circumscribed and restrained so
far as interference with determinations reached within the scope of
legislative authority is concerned.

Same—Orders—Extent of Review.
    3.   While the conclusions of the Public Service Commission in the
matter of fixing rates for a public utility are subject to review,
courts will not examine the facts further than to determine whether
there was substantial evidence to sustain its order fixing them.

*Appeals from District Court, Yellowstone County; Charles*
*A. Taylor, Judge.*

ACTION by the Billings Utility Company against the Public
Service Commission of Montana and another.  From a judg-
ment for defendants and an order denying a new trial, plain-
tiff appeals.  Affirmed.

    1.   Validity of statute conferring power on Public Service Commission
to fix rates of public utility, see notes in 14 **Ann. Cas.** 614; **Ann. Cas.**
1917C, 57.
    Power of Public Service Commission to increase franchise rates, see
notes in 3 **A. L. R.** 730; 9 **A. L. R.** 1165.
    3.   Right of public service corporation to judicial relief from contract
rates which have become inadequate, see notes in 6 **A. L. R.** 1659; 10
**A. L. R.** 1335.

*Messrs. Nichols & Wilson,* for Appellant, submitted a brief; *Mr. Edmund Nichols* argued the cause orally.

It is recognized that no rule for fixing the valuation of public utilities can be adopted which will give entirely satisfactory results because the element of future cost is involved, and this of course is an unknowable quantity. The best we can do is to so approximate it that the possibility of loss shall be reduced to the lowest point. In the case of *Consolidated Gas Co.* v. *City of New York,* 157 Fed. 849–856, the court has said: "What the court should ascertain is the fair value of the property being used, present as compared with the original cost; and it is also the value of the property at the time it is being used." (*San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 757, 43 L. Ed. 1154, 19 Sup. Ct. Rep. 804; *Stanislaus County* v. *San Joaquin etc. Irr. Co.,* 192 U. S. 201, 48 L. Ed. 406, 24 Sup. Ct. Rep. 241 [see, also, Rose's U. S. Notes]; *Cotting* v. *Kansas City Stock Yards Co.,* 82 Fed. 850, 854.)

The supreme court of the United States, in *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 15 Ann. Cas. 1034, 53 L. Ed. 382, 29 Sup. Ct. Rep. 192 [see, also, Rose's U. S. Notes], said: "And we concur with the court below in holding that the value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property which legally enters into the consideration of the question of rates has increased in value since it was acquired the company is entitled to the benefit of such increase." None of the decisions of the supreme court has held that actual value and reproductive value are synonymous. On the contrary, that court has emphasized actual value at the time of the inquiry as distinguished from inflated or fictitious values represented by a capitalization of a past period. The court justifies the reproduction cost because "upon reason it seems clear that in solving this equation the plus and minus quantities should be equally considered, and appreciation and depreciation treated alike."

In the notable decision in *Simpson* v. *Shepard* (*Minnesota Rate Cases*), 230 U. S. 352, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729 [see, also, Rose's U. S. Notes], the United States supreme court stated, as a cautious guide, that, in determining whether the right to receive just compensation for the service given to the public, which is to have the constitutional protection, has been denied, "each case must rest upon its special facts" (230 U. S., page 434). While pointing out that the general principles which are applicable in a rate case have been set forth in the decisions, the court placed a barrier before the practice, which was being fast built up, of reaching conclusions as to the fair value of property for rate purposes through the presentation of opinionated percentage allowances, when it said: "The ascertainment of that value [fair value] is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." We believe that it will be found that the rule adopted by the supreme court and followed so largely by a great majority of the states, will give most satisfactory results. While no inflexible method can, from the very nature of the case, be adopted, the cost of reproduction less depreciation rule is regarded as the most satisfactory as it provides for a consideration of present conditions and for the trend of cost in reproduction and also for many elements of cost which would be eliminated under the other plan.

Another question presented by the record and heretofore always ignored by the commission is, what should property be allowed as an element of value known as a "going concern value"? It is entirely distinct from value of unexpired franchise or goodwill, for neither of which perhaps would it be proper to allow, yet it clearly enters into the question of reproduction value. (*Pioneer Tel. & T. Co.* v. *Westenhaver,* 29 Okl. 429, 38 L. R. A. (n. s.) 1209, 118 Pac. 354.) In the foregoing case will be found a discussion of several questions raised by the record in the instant case, to which we invite the

court's attention. They cover the following: Interest during cost of construction, working capital or surplus fund. Investment is the principal consideration in the justification for an allowance for going value in a rate case. (*People ex rel. Kings County L. Co.* v. *Willcox,* 210 N. Y. 479, 51 L. R. A. (n. s.) 1, 104 N. E. 911.)

As to the question of surplus fund or working capital which has always been contended for by the utility company and as constantly denied by the commission, attention is directed to the case of *Cunningham* v. *Chippewa Falls W. & L. Co.,* and *Hill* v. *Antigo Water Co.,* 3 W. R. C. R. 623.

Value for rate-making purposes cannot be said to be fair to the utility and the patrons alike, which does not fully take into account the safeguards and assurances which the public, under the system of regulation, extends to investors under an advanced policy of adjusting the relations between public service corporations and the public. We submit, therefore, that the commission should, in determining the rates which the utility might charge its patrons, have taken into consideration the necessity for the creation of a surplus fund by the utility, and should have given the property of the utility a higher value than was given because of considerations properly affecting the value were omitted.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. E. G. Toomey,* for Respondents, submitted a brief; *Mr. Toomey* argued the cause orally.

"The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial in kind." (*Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 53 L. Ed. 150, 29 Sup. Ct. Rep. 67; *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Peik* v. *Chicago etc. Ry.,* 94 U. S. 164, 24 L. Ed. 97; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362, 38 L. Ed. 1014, 14 Sup. Ct. Rep. 1047; *St. Louis etc. Ry. Co.* v. *Gill,* 156 U. S. 649, 39 L. Ed. 567, 15 Sup. Ct. Rep. 484; *Cincinnati etc. Ry. Co.* v. *Interstate Commerce Commission,* 162

U. S. 184, 40 L. Ed. 935, 16 Sup. Ct. Rep. 700 [see, also, Rose's U. S. Notes] ; *Texas & Pac. Ry. Co.* v. *Interstate Commerce Commission,* 162 U. S. 197, 40 L. Ed. 940, 16 Sup. Ct. Rep. 666; *Interstate Commerce Commission* v. *Cincinnati Ry. Co.,* 167 U. S. 479, 42 L. Ed. 243, 17 Sup. Ct. Rep. 896; *Railroad Commission Cases,* 116 U. S. 307, 29 L. Ed. 631, 6 Sup. Ct. Rep. 334, 388, 1191; *Smyth* v. *Ames,* 169 U. S. 466, 515, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418; *McChord* v. *Cincinnati & N. R. Co.,* 183 U. S. 483, 46 L. Ed. 289, 22 Sup. Ct. Rep. 165; *Atlantic Coast Line R. Co.* v. *North Carolina Corp. Commission,* 206 U. S. 1, 11 Ann. Cas. 398, 51 L. Ed. 933, 27 Sup. Ct. Rep. 585 [see, also, Rose's U. S. Notes].)

From the legislative nature of the action there arises a restraint on the power of the judiciary to interfere with the determinations either of the legislature itself or of its daily administrative agent, the commission. If the court can say that the determination reached is within the zone of legislative authority, regardless of whether the court would have made a like decision, it will not interfere. (*Interstate Commerce Commission* v. *Union Pac. R. R. Co.,* 222 U. S. 541, 56 L. Ed. 308, 32 Sup. Ct. Rep. 108 [see, also, Rose's U. S. Notes]; *State Public Utilities Commission* v. *Springfield Gas & Electric Co.,* 291 Ill. 209, 125 N. E. 891; *Muskogee Gas & Electric Co.* v. *State* (Okl.), 186 Pac. 730; *Minneapolis, St. P. & S. S. M. R. Co.* v. *Railroad Commission,* 136 Wis. 163, 17 L. R. A. (n. s.) 821, 116 N. W. 905.)

All the law dealing with rate-making hang on the Fourteenth Amendment to the Constitution of the United States. The decisions of the United States supreme court are, therefore, absolutely controlling. The development of the principles now thought controlling will be found in these cases: *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347, 28 L. Ed. 173, 4 Sup. Ct. Rep. 48; *Railroad Commission Cases,* 116 U. S. 307, 29 L. Ed. 631, 6 Sup. Ct. Rep. 334, 388, 1191; *Dow* v. *Beidelman,* 125 U. S. 680, 31 L. Ed. 841, 8 Sup. Ct. Rep. 1028; *Chicago M. & St.*

*P. R. Co.* v. *Minnesota,* 134 U. S. 418, 33 L. Ed. 970, 10 Sup. Ct. Rep. 702; *Smyth* v. *Ames,* 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418 [see, also, Rose's U. S. Notes].

It goes without saying that the measure of the Billings Utility Company's right is a fair return upon the fair value of the property by it devoted to the public service. This is the allowance the commission has endeavored to give the company. (*Smyth* v. *Ames,* 169 U. S. 466, 544, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418 [see, also, Rose's U. S. Notes]; *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 43 L. Ed. 1154, 19 Sup. Ct. Rep. 804; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 15 Ann. Cas. 1034, 53 L. Ed. 382, 29 Sup. Ct. Rep. 192; *Simpson* v. *Shepard* (*Minnesota Rate Cases*), 230 U. S. 352, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729.) Other cases will be found in volume 1 of Whitten's ''Valuation of Public Service Corporations,'' sections 20 to 50, and in the 1914 Supplement to the same work, sections 1010 to 1033.

It likewise goes without saying that the value of the property is to be determined as of the time when the inquiry is made regarding rates. (*San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 43 L. Ed. 1154, 19 Sup. Ct. Rep. 804; *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439, 47 L. Ed. 892, 23 Sup. Ct. Rep. 571; *Spring Valley Water Works* v. *San Francisco,* 124 Fed. 574; *Stanislaus Co.* v. *San Joaquin etc. Irr. Co.,* 192 U. S. 201, 48 L. Ed. 406, 24 Sup. Ct. Rep. 241.)

Fair value for rate-making is not synonymous with fair value for taxation. (1 Whitten, sec. 9, and secs. 7 to 11 in that book, secs. 1005 and 1006 in 1914 Supplement; *Knott* v. *Chicago etc. R. Co.* (*Missouri Rate Cases*), 230 U. S. 474, 57 L. Ed. 1571, 33 Sup. Ct. Rep. 975 [see, also, Rose's U. S. Notes].)

Actual cost is a factor of importance but is not controlling. In this case it is to be considered in connection with the valuation of units whose actual cost is available, but it cannot

be applied as a blanket for aggregate value. The supreme court of the United States reversed District Judge Evans, who apparently shied at actual cost in *Cumberland Tel. etc. Co.* v. *Louisville,* 187 Fed. 637; *Louisville* v. *Cumberland etc. Tel. Co.,* 225 U. S. 430, 431, 56 L. Ed. 1151, 32 Sup. Ct. Rep. 741; nevertheless appellant cites the overruled case. The court will find the actual cost theory applied in these very late commission cases: *Re Laporte Gas & E. Co.* (Ind.), P. U. R. 1921A, 824; *Re York County Water Co.* (Me.), P. U. R. 1921A, 439; *Breen* v. *Northern New York Utilities* (N. Y. 2d Dist.), P. U. R. 1921B, 463.

Value is a fact to be determined by a consideration of all relevant evidence. "The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." (*Simpson* v. *Shepard* (*Minnesota Rate Case*), 230 U. S. 352, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729 [see, also, Rose's U. S. Notes].) The price paid on mortgage sale "is evidence—we might say more important evidence than the original cost." (*San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439, 47 L. Ed. 892, 23 Sup. Ct. Rep. 571 [see, also, Rose's U. S. Notes].) "The value of real estate and plant is to a considerable extent a matter of opinion and the same may be said of all the personal estate." (*Smyth* v. *Ames,* 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418 [see, also, Rose's U. S. Notes].) In fact, *bona fide* offers (*Jackson* v. *Armstrong,* 50 Mich. 65, 14 N. W. 702), appraised values (*Rosenfield* v. *Case,* 87 Mich. 295, 49 N. W. 630), and prices procured at public sale (*Jennings* v. *Prentice,* 39 Mich. 421), have all been regarded as relevant. *Smyth* v. *Ames,* like *Leder* v. *National Union Fire Ins. Co.,* 175 Mich. 470, 141 N. W. 646, undertook to name only certain relevant facts, but made no attempt to exclude proof of other facts equally relevant. As to theories to be applied, see *State Public Utilities*

*Commission* v. *Springfield Gas & Electric Co.*, 291 Ill. 209, 125 N. E. 891, P. U. R. 1920C, 640.

It is further objected that "there has been nothing allowed for franchise value" as such. There should not be. The franchise held by the company is a gift of the city. It is of no value for rate-making purposes, for if the utility had no franchise, and was a tenant at sufferance in the city's streets, rates would still have to be constructed to compensate for the use of the property. (*Denver* v. *Denver Union Water Co.*, 246 U. S. 178, 62 L. Ed. 649, 38 Sup. Ct. Rep. 278; *Consolidated Gas Co.* v. *Newton*, 267 Fed. 231, 240, P. U. R. 1920F, 483.)

It is next objected that the commission has ignored "going concern value." Appellant fails to cite the controlling cases on the point, which are: *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 53 L. Ed. 371, 29 Sup. Ct. Rep. 148; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153, 59 L. Ed. ——, 35 Sup. Ct. Rep. 811 [see, also, Rose's U. S. Notes]; *Denver* v. *Denver Union Water Co.*, 246 U. S. 178, 62 L. Ed. 649, 38 Sup. Ct. Rep. 278.

On the question of depreciation we cite the following decisions of the supreme court of the United States: *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 10, 53 L. Ed. 371, 29 Sup. Ct. Rep. 148; *Simpson* v. *Shepard* (*Minnesota Rate Cases*), 230 U. S. 352, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729 [see, also, Rose's U. S. Notes]. In both of the foregoing cases valuations had been made on cost of reproduction new, with no deductions for depreciation. The court flatly rejected the theory, holding that there must be a deduction for ordinary deterioration due to wear and tear.

Among other things to be considered in determining the rate base is "the probable earning capacity of the property under particular rates prescribed." (*Smyth* v. *Ames*, 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418 [see, also, Rose's U. S. Notes].) Obviously, what particular rates will earn is a

prophecy—all rate-making is a prophecy.  For that reason the courts have always insisted that in all, except very clear, cases (of confiscation) rates shall be subjected to the ordeal of actual experience before being condemned as unfair.  (*Lincoln Gas etc. Co.* v. *Lincoln,* 250 U. S. 256, 262, 63 L. Ed. 968, 39 Sup. Ct. Rep. 454; *Louisville* v. *Cumberland Tel. & Tel. Co.,* 225 U. S. 430, 56 L. Ed. 1151, 32 Sup. Ct. Rep. 741; *Simpson* v. *Shepard (Minnesota Rate Cases),* 230 U. S. 352, 469–472, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729 [see, also, Rose's U. S. Notes]; *Rowland* v. *Boyle,* 244 U. S. 106, 61 L. Ed. 1022, 37 Sup. Ct. Rep. 577; *Darnell* v. *Edwards,* 244 U. S. 564, 61 L. Ed. 1317, 37 Sup. Ct. Rep. 701; *Consolidated Gas Co.* v. *Newton,* 267 Fed. 231, P. U. R. 1920F, 483; *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 89, 98, P. U. R. 1919C, 364, 121 N. E. 772.)

MR. COMMISSIONER JACKSON prepared the opinion for the court.

On December 13, 1918, the Billings Utility Company, a Montana corporation, engaged in the public service of furnishing hot-water heat in the city of Billings, Montana, filed with the Public Service Commission its petition for an increased rate. A hearing was had on January 17, 1919, at which evidence in support of the company's petition was introduced, and the protestant, Montana Realty Company, was also heard.  Subsequently Report and Order No. 259, Public Service Commission of Montana, was filed, denying the increase.  (12 Mont. R. R. & P. S. C. 120.)  Thereafter this action was instituted in the district court to vacate and set aside the above-mentioned order on the ground that it was erroneous and unreasonable.  Issue was joined by the answer of the commission.  The cause was tried to the court sitting without a jury, on May 9, 1919.  At the trial, in addition to the transcript of the evidence offered at the hearing of January 17, 1919, new evidence was received. Pursuant to subdivision (b), section 26, Chapter 52, Session Laws of 1913, a copy of the new evidence was submitted to the

commission by the court, and, after having reviewed the same, the commission declined to rescind, modify or amend its order. Thereafter, the court heard the defense of the commission, and on August 19, 1919, found fully in its favor. From the judgment and an order denying a new trial, plaintiff appeals.

At the outset we cannot refrain from comment on the splendid brief filed herein on the part of the respondent, prepared by counsel for the Public Service Commission. Assistance of such material character is greatly appreciated. It aids the court in collecting the authorities applicable, and in arriving at an understanding and determination in such an important case, with little waste of valuable time in research.

In their brief, counsel for plaintiff urge several errors, but on the oral argument they abandoned all save two questions, *viz.*, the plan of fixing valuation of public utilities and the element of value contained in a "going concern." They expressly stated that no value could be given to the franchise, and that they had no right to ask for a separate surplus fund; that it must be created from dividends.

The commission, before the hearing on the petition of December 13, 1918, had already granted increased rates to the company as follows: August 31, 1917, five cents per square foot of radiation, approximately fourteen cents over the rate of 1915. This was an emergency order, which was continued by a supplemental order November 23, 1917; July 18, 1918, a second supplemental order, granting an additional increase of two cents per square foot; November 20, 1918, a further additional increase of six cents per square foot was granted. Thus it will be seen that during the period of price soaring on materials and labor, the commission, appreciating the conditions, acted accordingly.

The rate base finally fixed by the commission is the real point of attack herein. It was established after having considered four estimates made by competent experts. No one of the tabulations submitted was in whole adopted, the commission using its own discretion as to the values and depreciation.

A diversity as to amount and method of ascertainment appears from a perusal of the different estimates, but it is unnecessary to weigh down this opinion with a mass of intricate calculations. The commission's value of $133,351.71 rests on the 1914 base of $82,000 the sum which Meyers, superintendent of the plant, and more familiar with it than any other person, then thought the plant was worth, and to that amount was added every dollar which the company officials testify has been devoted to the plant since 1914. The additional sums were from two sources; $51,085.23 from rate earnings and $19,750 new capital. This value of $82,000 was made under oath by Meyers, as receiver, before the present defendant came into possession, and it is highly unreasonable to assume that his estimate was less than the actual value, as he was endeavoring to realize every cent possible for the creditors. The same figure was reported by Meyers in his first annual report to the Public Service Commission as the value of the plant on June 30, 1914, for rate-making purposes. For the "fair prices" on the "reproduction cost" theory, all of the engineers reverted to the years 1914 and 1915. What, then, as the defendant fairly urges, could be a better foundation for the commission to select than the Meyers appraisal of 1914? Every increase of value added to the plant since 1914 is embraced in the additional sums mentioned.

Depreciation, however, takes its toll. The commission selected $62,000 as a depreciation base, excluding from the value of $82,000 the company's own valuation of realty at $20,000, and applied the rate of five per cent agreed by all to be approximately fair, for four years, making a depreciation of $12,400. On the earnings turned into physical property and the new capital, it takes an average term of two years at five per cent on $70,835.23 as principal, making additional depreciation of $7,083.52. A total depreciation of $19,483.52, deducted from the base $152,835.23, gives the value of the plant for rate making in 1919, in the sum of $133,351.71. It was shown at the trial that the results of nine months' operation under the

rates attacked netted the company approximately eight per cent on the valuation of $180,000, and a little less than eleven per cent on the valuation of $133,000.

The following sections from Chapter 52, Session Laws of [1] 1913, quite clearly and unequivocally set forth the force and character of rates and charges fixed by the commission, the ground upon which recourse may be had to the courts, and the procedure therein:

"Section 25. All rates, fares, charges, classifications and joint rates fixed by the Commission shall be enforced, and shall be *prima facie* lawful, from the date of the order until changed or modified by the commission, or in pursuance of section 26 of this Act," *etc.*

"Section 26. Any party in interest being dissatisfied with an order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within ninety (90) days commence an action in the district court of the proper county against the commission and other interested parties as defendants to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates, fixed in such order is unlawful or unreasonable, or that any such regulation, practice or service, fixed in such order is unlawful or unreasonable," *etc.*

"(a) No injunction shall issue suspending or staying any order of the commission except upon application to the court or judge thereof, notice to the commission having been first given and hearing having been had thereon; provided, that all rates fixed by the commission shall be deemed reasonable and just, and shall remain in full force and effect until final determination by the courts having jurisdiction.

"(b) If, upon the trial of such action, evidence shall be introduced by the plaintiff which is found by the court to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in

writing to the contrary, shall transmit a copy of such evidence to the commission, and shall stay further proceedings in said action for fifteen (15) days from the date of such transmission. Upon receipt of such evidence the commission shall consider the same and may modify, amend, or rescind its order relating to such rate or rates, fares, charges, classifications, joint rate or rates, regulation, practice or service complained of in said action, and shall report its action thereon to said court within ten days from the receipt of such evidence  *  *  *

"(e) In all actions under this Act the burden of proof shall be upon the party attacking or resisting the order of the commission to show that the order is unlawful or unreasonable, as the case may be."

The rates fixed, as by the statute directed, are *prima facie* lawful, can be attacked in court on the sole ground that they are unlawful or unreasonable, shall be deemed reasonable and just until final determination by the courts and the burden of proof rests on the party antagonizing the order.

It is well-settled law that rate-making is purely a legislative [2] act, and as such the power of the courts is circumscribed and restrained in interference with determinations reached within the scope of legislative authority.

The legislature itself has the undoubted authority to regulate public utilities,° and by means of a duly constituted commission it operates through its administrative medium. "The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind." (*Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 53 L. Ed. 150, 29 Sup. Ct. Rep. 67; *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Peik* v. *Chicago & N. W. Ry.,* 94 U. S. 164, 24 L. Ed. 97; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 38 L. Ed. 1014, 14 Sup. Ct. Rep. 1047; *St. Louis & S. F. Ry. Co.* v. *Gill,* 156 U. S. 649, 39 L. Ed. 567, 15 Sup. Ct. Rep. 484; *Interstate Commerce Commission,* v. *Cincinnati etc. Ry. Co.,* 162 U. S. 184, 40 L. Ed. 935, 16 Sup. Ct. Rep. 700; *Inter-*

*state Commerce Commission* v. *Texas & Pac. Ry. Co.*, 162 U. S.
197, 40 L. Ed. 940, 16 Sup. Ct. Rep. 666; *Interstate Commerce
Commission* v. *Cincinnati etc. Ry. Co.*, 167 U. S. 479, 42 L. Ed.
243, 17 Sup. Ct. Rep. 896; *Railroad Commission Cases*, 116
U. S. 307, 29 L. Ed. 636, 6 Sup. Ct. Rep. 334, 388, 1191;
*Smyth* v. *Ames*, 169 U. S. 466, 515, 42 L. Ed. 819, 18 Sup. Ct.
Rep. 418; *McChord* v. *Cincinnati & N. R. Co.*, 183 U. S. 483,
46 L. Ed. 289, 22 Sup. Ct. Rep. 165 [see, also, Rose's U. S.
Notes].)

The court has not the power to substitute its judgment for
[3] that of the commission, nor can it set the commission's
conclusions aside when they have been made lawfully and
reasonably, within the proper sphere of authority. "There
has been no attempt to make an exhaustive statement of the
principle involved, but in cases thus far decided, it has been
settled that the orders of the commission are final unless:
(1) Beyond the power which it could constitutionally exercise;
or (2) beyond its statutory power; or (3) based upon a mis-
take of law. But questions of fact may be involved in the
determination of questions of law, so that an order, regular on
its face, may be set aside if it appears that (4) the rate is so
low as to be confiscatory and in violation of the constitutional
prohibition against taking property without due process of law;
or (5) if the commission acted so arbitrarily and unjustly as
to fix rates contrary to evidence, or without evidence to sup-
port it; or (6) if the authority therein involved has been exer-
cised in such an unreasonable manner as to cause it to be
within the elementary rule that substance, and not the shadow,
determine the validity of the exercise of the power. [Citing
cases.]

"In determining these mixed questions of law and fact, the
court confines itself to the ultimate question as to whether the
commission acted within its power. It will not consider the
expediency or wisdom of the order, or whether, on like testi-
mony, it would have made a similar ruling.

" 'The findings of the commision are made by law *prima facie* true, and this court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience.' (*Illinois Cent. R. Co.* v. *Interstate Commerce Commission,* 206 U. S. 441, 51 L. Ed. 1128, 27 Sup. Ct. Rep. 700.) Its conclusion, of course, is subject to review, but when supported by evidence is accepted as final; not that its decision, involving as it does so many and such vast public interests, can be supported by a mere scintilla of proof; but the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order." (*Interstate Commerce Commission* v. *Union Pac. R. R. Co.,* 222 U. S. 541, 56 L. Ed. 308, 32 Sup. Ct. Rep. 108; see, also, *State Public Utilities Commission* v. *Springfield Gas & Elec. Co.,* 291 Ill. 209, 125 N. E. 891; *Muskogee G. & E. Co.* v. *State* (Okl.), 186 Pac. 730; *Minneapolis, St. P. & S. S. M. R. Co.* v. *Railroad Commission,* 136 Wis. 163, 17 L. R. A. (n. s.), 821, 116 N. W. 905.)

There was nothing tangible before the commission or trial court with respect to "going concern" value. The various inventories and appraisals do not contain the item, and there is no effort on the part of the utility company to suggest what it should be. For aught this court may know, allowance for "going concern" may be included in the liberal estimate placed on the company's real estate. There was evidence showing it to be greatly less in value than the figure of the company, but the commission allowed the company's valuation to stand.

However, with respect to both matters complained of, the burden of proof is upon the plaintiff company. The burden of showing that the rate established by the commission was unlawful, unauthorized, unreasonable or erroneous was plainly not sustained. There was ample evidence to support the action of the commission, and the court was in duty bound to fully affirm its conclusion.

For the reasons herein contained, we recommend that the judgment and order be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment and order are affirmed.

*Affirmed.*

Rehearing denied January 6, 1922.